Sampra v. U.S. Department of Transportation Mr. Grossman. Good morning, Your Honors, and may it please the Court, my name is Richard Grossman. I represent the plaintiff, Sarah Sampra. Your Honors, this case presents a relatively narrow issue. Namely, what is the proper interpretation of the term equivalent position for FMLA purposes? Why does that matter in this case if the evidence shows that even if she had never taken FMLA leave, this new supervisor, Mr. Siebert, was going to stop the arrangements that had been in place before for these TSSC work releases and get his field engineers back out into the field? It seems to me that breaks the causal link altogether between the FMLA leave and what happened. A couple of things there. One is, as this Court's decision, and I believe the word is Brennison, the occasion for the restructuring can't be the mere fact of the FMLA taker's absence. But it isn't. For reasons best known to themselves, Ross leaves, she transfers, Siebert comes in, he's down in Kansas City, he doesn't care who's up in Chicago, and he restructures the work assignments. So what does that have to do with Ms. Sampra's FMLA leave? Well, what happened was that he assigned Ms. Sampra's work to himself. Right. Somebody had to do it. Right. Someone had to do it. And that job existed, and there was no indication that that job was wiped out. It's just that Mr. Siebert decided, well, I'm going to be doing it. He says he can do it in an hour a week. Right. It's remarkable, and I don't know what emphasis you want to place on it or not, but he says that something that my client had been doing for three and a half years, for 40 hours a week, he could do in an hour. And I find that just on its face incredible, but regardless. The other thing about Mr. Siebert's testimony is... But again, I mean, we have cases that say that if the event would have happened no matter whether the FMLA leave was taken or not, then the bad consequences is not because of the FMLA leave. And in this case, as I read the department's brief, they concede that Siebert is requiring her to perform different day-to-day responsibilities, but they're saying that that is not because of the FMLA leave. Everybody who worked for Siebert was out in the field working as a field engineer. Exactly. Everyone was out doing... And she hadn't been, but he says, well, your job classification is field engineer, and so I'm going to change the day-to-day work and put you back in the field, where as far as he was concerned, everybody had to be. Not because she'd been gone, but because he did it to everybody. Well, I'm going to again insist that what happened here was that she left, that job had to be done, he decided to do it himself. That's because she was gone. Everyone else was in the field. This is something she had been doing for three and a half years. If she hadn't been gone, she would have been doing that. See, there's where I think the evidence doesn't show that. The evidence shows Mr. Siebert saying, this is a one-hour a week function, maybe she was doing too much. I have no idea what explains the 39-hour discrepancy between what he thought needed to be done and what she was doing. But an employee returning, you only get the rights that you would have been entitled to had you not taken the leave. Siebert testifies that he was going to change the job assignments for anybody who wasn't in the field. I would also like to confront that testimony directly and say that I have discussed in my brief where that is a post hoc, self-serving statement, which I don't believe is appropriate in a summary judgment. The cases that allow uncorroborated self-serving statements are cases in which the non-moving makes some kind of a statement and you want to use it to thwart the summary judgment. I haven't encountered a case where you can actually produce a post hoc rationalization for something and introduce it as evidence of exactly what would have happened. That's what happened here. He already knew that my client had filed a lawsuit and was complaining about the fact that there were different duties and so forth. I'm not suggesting necessarily that there's some kind of untruth. I'm just merely suggesting that that's not an appropriate piece of evidence to consider in a summary judgment. What could have been kept out? How would you keep it out? Well, I suppose on a motion for summary judgment you could have moved to strike it, but I don't believe, you know what, I just don't recall whether that... So what evidence is there undermining Mr. Sibbert's testimony? Well, the very fact that someone, Ms. Ross, had allowed my client to do this work for three and a half years, it just defies credulity that someone... Could I ask you to address the issue of the statute of limitations and willfulness, which you really barely brushed by in your reply brief, and it may well be dispositive. Well, I produced the testimony of Mr. Sibbert, who I think was the final decision-maker in this instance, and I asked him, well, here's somebody coming back from FMLA leave. What did you do to consult the regulations or talk to somebody? I didn't think it was necessary. I'm the decision-maker. Given the fact that the district judge found no violation, how could a trier of fact treat this as a willful violation? Well, the definition for those purposes, as I understand it, also includes reckless disregard. It seems to me that when you're a manager and you simply don't even look at the regulations in a situation which would call for you to do so, I mean, here you've got somebody coming back after three months of FMLA leave. Well, the FMLA allows a manager to do what he or she would have done anyway, right? Yes. Okay. That's what Sibbert tells us was his state of mind. I understand you don't want to accept that as credible for purposes of summary judgment, but it is your burden to come up with something else. And given that a U.S. district judge said no violation here, how do we say this was reckless, a willful violation of the statute? Well, that presumes the correctness of the judge's decision that there was no violation. No. We're saying that there was. No. It assumes that that's a reasonable conclusion, not correct. With all due respect, Your Honor, we're arguing that the starkness of the difference between what my client was assigned to from what she had been doing is just on its face a violation of the FMLA. Would you agree that six months before her leave, Ms. Ross could have reassigned her to just exactly the same duties? I'm assuming that she could have, although, again, the term field engineer is nowhere in any regulation or any statute or anything that I can see. She was hired as an electrical engineer, and electrical engineers, just like attorneys do different things, electrical engineers do different things. Some of them are in the field, some of them are in the office. She had this office position, and there's no evidence that that job didn't need to be done, even if it was only an hour. Can I ask along those lines, can you tell us what is a TSSC work release? What's involved? I believe it's a proof. I'm going to ask the defense the same thing. You know what, I'm suspecting that my opponent actually knows a little better than I do, but I believe that it's approving the work that's been done or the schedules or whatever by the people or actually the contractors working at the airport. That's what she did. She had actually worked for that party. Approving payments, approving schedules, approving the work that satisfies the criteria. And that sort of thing. I see that my time is up. Okay. Thank you. I'll let you have a minute in rebuttal. Mr. Snodgrass, maybe you should start with Judge Hamilton's question about TSSC work releases. May it please the Court, Counsel, I will start by answering the question about the work releases. The work releases are contracts between the FAA and contractors who actually go out and do some of these work in the field. And so managing those work releases is essentially keeping a running list of where things are. Are things on track with the given contract? You know, is there a delay? Might it involve going out to see, you know, is somebody really, you know, fixing this thing or repaving this area or doing whatever it is they do? It could involve a trip to the airport in a rare circumstance, but it is not checking the contractor's work to ensure it's being done properly. That's what I'm trying to get at is whether there's, like, the short version of the way you do this, the one hour a week version or the four hours a month version, and the much more in-depth version. No, Your Honor, there is not. And I think Ms. Zamper's testimony was that she very rarely went out to the airport while she was doing this job. Where was her office? Excuse me? Where was her office? In the FAA local office in Des Plaines, Illinois. On Des Plaines. Near O'Hare. I think the Court is asking the right question about what Ms. Zamper is trying to do here is to get a benefit that she would not have gotten had she not gone out on leave. In other words, Mr. Siebert testified that he required all of his field engineers to go into the field and perform engineering work in the field as they were hired to do. What about this argument that there is no such job description as field engineer versus office engineer? Sure. I mean, it's true that there is no document that we found in Discovery that specifically lays out the duties of a field engineer versus an office engineer. However, Ms. Zamper repeatedly in her deposition admitted that she had applied for a field engineering job. She knew that that required 100% travel to an airport, that that was the job that she was hired to perform, that she stayed in that classification. She submitted an affidavit in the administrative proceeding admitting that that was her classification up until the point she went out on leave. So while there's no document that lays out exactly what a field engineer was supposed to do, Ms. Zamper and all of the other witnesses are in agreement on what a field engineer was supposed to do. There's no indication that that's why she took the job because she would not have to be out in the field. No. She actually testified that there were no office positions available when she applied, and so this was the job that was available. It's the job she got. So I thought she started out in the field and then Ross transfers her to this desk job. That's correct. When she first started as a field engineer, she was working in the field. She then managed to get the job just overseeing the work releases in the office. And as the Court has pointed out, I think Mr. Siebert, it's not a post hoc rationalization for Mr. Siebert that he would have required her to go to the field anyway. Does the record show whether Mr. Siebert changed anybody else's work description? I don't want to say job classification because I don't want to get into that, but did he do any other shuffling around or we just don't know? Because he's in Kansas City. He has a pretty big region, right? That's correct. He was managing both the Kansas City office and the Chicago Disciplines office. No, the record doesn't reflect that, but the record does reflect that all of the other field engineers were out in the field, and so they might have been at a project in Minneapolis, say, and that project concludes and he would have to assign them to a new project in Nashville or wherever. And so there's just natural movement that way. There's nothing in the record about him specifically reassigning anyone else. Mr. Snodgrass, let me just tell you what concerns me about your argument. You're relying pretty heavily, it seems, on this field engineer concept, but we know that the concept, at least, whatever we call it, was flexible enough to include Ms. Sampras' office-based work for several years before the pregnancy and birth. There are a lot of parts of federal employment law where we basically say we're not going to take job descriptions and job categories at face value. We're going to look at how jobs were actually done, the ADA that comes up all the time, for example. And so I guess I'm troubled by resolving this sort of issue on summary judgment, given particularly even the lack of even the formal designations, which is why I was asking about the willfulness issue. I think she shouldn't have been assigned to do this one-hour-a-week job in the office. Her supervisor's supervisor was not aware, and this is in the record, was not aware that that's what was being done. But what she's really asking for is for you to freeze the employer in time, for an employee to somehow manage to avoid performing a certain job duty that they don't want to perform or that's difficult, then go out on FMLA leave, and when they return, the employer simply can't require them to do that job duty. That's what Ms. Sampra is asking the court to rule, and that's not what the FMLA requires. In addition, the willfulness issue, Mr. Siebert did not review the FMLA whenever he determined he could return Ms. Sampra to the field, but that's not evidence of willfulness. It's because he thought he was doing the right thing, and he understood that he needed to return her to the same position that she was in previously. That requires a fair amount of interpretation. I mean, we know he didn't look at it, right? Why he didn't look at it, I guess maybe we have his testimony, that he didn't think there was an issue. That's correct. Maybe he was negligent in not thinking that. I mean, they have to get all the way over the bar of reckless or worse before you have the three-year statute. That's correct. And he testified that he believed that he was complying with the FMLA by requiring her to go work in the field. And as Judge Hamilton noted, Judge Guzman agreed with that below. He could have moved that job to another location too, couldn't he? The work release job? Since it was only an hour a week, I suppose it could have been done anywhere. But Mr. Siebert believed that there was actual engineering work and there were projects that were in the field that needed to be performed, and that's why he assigned Ms. Samper to perform one of those jobs. Doesn't he say at some point that had he not been able to assign one of the FAA's engineers, he would have had to go out and get a contract person? That's correct. That was his understanding that there's a certain amount of literal, actual construction that needs to be done, and if an FAA employee engineer is not doing it, the federal government will have to hire someone else to do that job and to hire a contractor to do the field work that the employee is meant to be doing. Unless you have any further questions, I would ask that you affirm the judgment of the district court. All right. Thank you very much. I told you I'd give you one minute, Mr. Grossman. Let me address that last point first. They would have also had to have, in my opinion, gone out and found someone to do my client's job. As has been noted, Mr. Siebert had a huge area that he was covering from, I think it goes from North Dakota to Texas, right? So here's someone who's got that much responsibility and he's going to undertake my client's job that she'd been doing for three and a half years, she claims 40 hours a week and was paid to do so, the question being that job still needed to be done. There's been no denial that somebody had to do that job. And if you look at Brennison, I insist on it that just the fact that she was gone and gave him the opportunity to absorb that job, if she had been there, maybe he would have said, okay, I'll let you do office work for four hours a month and you have to do something else and maybe this case wouldn't be here. But at least there's the insistence that her job was necessary. Okay. All right. Thank you very much. Thanks to both counsel. Take the case under advisement.